**HORNE BROTHERS, INC., Plaintiff,**

v.

**Melvin R. LAIRD et al., Defendants.**

**Civ. A. No. 289–72.**

United States District Court,
District of Columbia.

April 13, 1972.

Robert H. Turtle, Washington, D. C., for plaintiff.

Joseph M. Hannon, Chief of the Civil Div., United States Atty.'s Office for the District of Columbia, and Roger Werdig, Asst. U. S. Atty., Washington, D. C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

AUBREY E. ROBINSON, Jr., District Judge.

On February 15, 1972, Horne Brothers, Inc. (hereinafter referred to as "Horne"), instituted this action on its claim which is, in essence, that the Defendant, John H. Chafee, the Secretary of the Navy (hereinafter referred to as "Defendant" or "the Navy"), had acted arbitrarily, capriciously, in violation of law and without rational foundation, under regulations promulgated under the authority of Defendant, Melvin R. Laird, Secretary of Defense (hereinafter referred to as "Defendant Laird" or "the Department of Defense"), in the conduct of a procurement pursuant to an Invitation and Bid N62678–72–B–0048 (hereinafter referred to as the "IFB"), in refusing to award the contract for work under the IFB to Horne, and instead awarding the contract under the IFB to Metro Machine Corporation (hereinafter referred to as "Metro"). In addition to its Complaint, Horne filed Motions for Temporary Restraining Order and for Preliminary Injunction, and Memoranda in support of the said Motions, seeking an injunction against any further action to effectuate or implement the award of the contract or the direction to proceed with work under the contract by the Defendants to Metro, pending the decision of the General Accounting Office (hereinafter referred to as "GAO") on Horne's Protest against the award of the Contract and pending Navy action in accordance with the GAO decision; the Complaint was verified by Mr. Floyd O. Culp, Jr., President of Horne, and signed by counsel, and was submitted with Exhibits A, B and C attached.

A hearing on the Motion for Temporary Restraining Order was set for February 16, 1972. On February 16, 1972, the Plaintiff filed a Supplemental Memorandum of Points and Authorities in support of its Application for Temporary Restraining Order and Motion for Preliminary Injunction, with Exhibits A and B thereto. On February 16, 1972, counsel for Horne and for Defendants were heard in open Court on the Motion for Temporary Restraining Order. Counsel for the Defendants introduced Exhibits 1, 2 and 3, which were entered into the record.

On February 17, 1972, the Court entered an Order denying Horne's application for a temporary restraining order. Horne moved for an Injunction Pending an Appeal from the Court's Order Denying the Temporary Restraining Order. The Court denied Horne's Motion for an

Injunction Pending Appeal from the Order Denying the Temporary Restraining Order.

On February 28, 1972, the Defendants filed an Opposition to Horne's Motion for Preliminary Injunction.

On March 2, 1972, Horne filed an application for an Oral Hearing on its Motion for Preliminary Injunction, an Affidavit of Robert H. Turtle, and an Affidavit of Herbert V. Kelly, with Exhibits thereto.

On March 8, 1972, Horne filed a Supplemental Memorandum of Points and Authorities in Support of its Motion for Preliminary Injunction, with Exhibits A and B, and an affidavit of Floyd O. Culp, Jr., and Philip R. Mayhew, dated March 3, 1972.

## FINDINGS OF FACT

1. Plaintiff Horne is a corporation operating under the laws of the Commonwealth of Virginia and having its principal place of business in Newport News, Virginia.

2. Defendant Melvin R. Laird is the Secretary of Defense, with authority over activities of the Department of Defense, including procurement matters and the promulgation of the Armed Services Procurement Regulation. Defendant John H. Chafee is the Secretary of the Navy, with authority over activities of the Department of the Navy, including procurement matters.

3. In early December of 1971, the Navy issued the IFB and sent a copy to Horne. (Verified Complaint, para. 4.)

4. Subsequently, on or about December 21, 1971, Horne received a letter dated December 14, 1971, from the Navy. That letter consisted of three paragraphs as follows:

"Based upon an investigation conducted by the Naval Investigative Service, this Command has substantial reason to believe that for a period of years including 1971, representatives of Horne Brothers, Inc. have been giving gratuities and favors to Naval personnel assigned to official contractual or inspection duties in relation to your company. These inducements or irregularities are considered to indicate a lack of business integrity and to bring into serious question the present responsibility of your company as a Government contractor. Accordingly, a decision has been made to place Horne Brothers, Inc., on the Joint Consolidated List of Debarred, Ineligible and Suspended Contractors, in a suspended status.

"This suspension is for a temporary period, pending the completion of the investigation and such legal proceedings which may ensue. It is effective throughout the Department of Defense. During the course thereof, bids and proposals will not be solicited from you and, if received, will be considered and awards made only if it is determined by the Secretary or his authorized representative to be in the best interest of the Government.

"The foregoing action has been taken by virtue of the authority of the Secretary of the Navy and in accordance with the procedures of Section 1, Part 6 of the Armed Services Procurement Regulation, two copies of which are enclosed." (Verified Complaint, para. 5, and Exhibit A thereto.)

5. Immediately upon receipt of the Navy's letter dated December 14, 1971, Horne protested the suspension to the United States Navy through its Senator William B. Spong, Jr., and its Congressman Thomas N. Downing. (Kelly Affidavit, para. 2.)

6. At the time and place set for the bid opening, to-wit, 9:00 o'clock a. m. on January 5, 1972, three bids on Lot II of the IFB were opened and were ranked in the following reverse numerical order: $1,639,914 bid by Horne; $1,749,000 bid by Metro; and $2,316,935 bid by Norfolk Shipbuilding & Drydock Company. (Verified Complaint, para. 6.)

7. In a two-paragraph letter dated January 7, 1972, the Contracting Officer on the IFB wrote to Horne as follows:

"By Chief Naval Material letter dated 14 December 1971 you were advised

that Horne Brothers, Inc., has been placed on the Joint Consolidated List of Debarred, Ineligible, and Suspended Contractors, in a suspended status. You were further advised that during the course of the suspension, which is for a temporary period pending the completion of the investigation and such legal proceedings which may ensue, bids and proposals 'will not be solicited from you and, if received, will be considered and awards made only if it is determined by the Secretary or his authorized representative to be in the best interest of the Government.'

"Horne Brothers, Inc., on 5 January 1972, submitted an unsolicited amended bid in response to IFB No. N62678–72–B–0048. This is to advise that it has not been determined to be in the best interest of the Government to consider your bid. Accordingly, your bid has been rejected and will not be considered for award under the above mentioned IFB." (Defendants' TRO Exhibit 3.)

The date of receipt of that letter by Horne is not apparent from the record.

8. On January 12, 1972, with or without knowledge of the letter dated January 7, 1972, Horne's President and counsel met with Mr. Hugh Witt, Special Assistant to the Assistant Secretary of the Navy, Mr. Hart T. Mankin, General Counsel, U. S. Navy, and Albert C. Kornblum, Assistant to the General Counsel, U. S. Navy, to discuss the suspension of Horne and to request that a contract be awarded to Horne under the IFB as being in the best interest of the Government. (Verified Complaint, para. 7; Kelly Affidavit, para. 3.) An extensive presentation was made at the meeting and a memorandum of facts as well as an extensive list of commendations from Navy Commanders recommending Horne Brothers as a ship repairer were filed at that meeting. (Kelly Affidavit, paras. 4 and 5, and attachments thereto.)

9. Horne, through its Washington counsel, undertook a series of telephone conversations with the Special Assistant to the Assistant Secretary, Mr. Hugh Witt, on January 18, 20, 21, 24, 28, and February 4, 8 and 9, 1972, directed toward obtaining a Secretary of the Navy determination that Horne's participation as a prime or subcontractor in the work called for under the IFB would be in the best interest of the Government, and at the same time requesting a full evidentiary hearing on the allegations underlying Horne's suspension. (Verified Complaint, Exhibit B; Affidavit of Robert H. Turtle, paras. 5 and 6.)

10. On February 11, 1972, Horne filed a protest with the GAO, protesting the award of the contract under the IFB to any other bidder. (Affidavit of Robert H. Turtle, para. 8.)

11. By letter dated February 12, 1972, hand-carried to the office of Mr. Hugh Witt on that date, counsel for Horne summarized certain of the previous telephone conversations and closed with a reiteration of a request for a hearing under the gratuities regulations as found in the Armed Services Procurement Regulation, Appendix D. (Affidavit of Robert H. Turtle, para. 9; Verified Complaint, Exhibit B.)

12. On February 14, 1972, Mr. Hugh Witt informed Horne's counsel that it was the decision of the Secretary of the Navy that Horne would not be allowed to participate in the work called for in the IFB, either as a prime contractor or as a subcontractor, and that no hearing would be held by the Navy on the issue of the grounds for Horne's suspension. (Affidavit of Robert H. Turtle, para. 10.)

13. A Special Grand Jury was called into session in November 1971 in the Eastern District of Virginia to investigate Horne "in re certain government contracts." Although by February 16, 1972, this Special Grand Jury had been in session approximately ten days, no indictment had been returned (nor had any been requested) against Horne, although the investigation was continuing. (Defendants' TRO Exhibit 2.)

14. Horne is engaged primarily in the business of contracting for services to be rendered directly or indirectly to the Department of Defense, and over the last six years, 95% of Horne's work has been for the United States Navy. (Affidavit of Culp and Mayhew, para. 8.)

15. As of December 14, 1971, the date of the suspension notice, there were three Navy jobs in progress at the Horne Brothers yard, and Horne had been the low bidder on a fourth naval vessel repair contract that was withdrawn the morning the ship was to arrive at its yard. (Affidavit of Culp and Mayhew, paras. 5 and 7.)

16. Since the suspension at the direction of the Navy, no new contracts for work on naval vessels, either as a prime or subcontractor, have been awarded to Horne, even though it was the low bidder under the IFB. (Affidavit of Culp and Mayhew, para. 6; Verified Complaint, paras. 13 and 14.)

17. As a result of the suspension and the Navy's refusal to allow Horne to work on naval vessels as a prime or subcontractor, work in process valued at $785,000 at the beginning of December 1971 was reduced to $82,000 at the end of February, 1972; and in that same time period, and for that same reason, Horne's current assets were decreased by approximately 65% as contrasted with a reduction in liabilities of less than 10%; and the number of employees of the Company dropped from 290 to 215. (Affidavit of Culp and Mayhew, paras. 2, 3, 4 and 5.)

18. At the beginning of March 1972, Horne had liquid assets of $406,500, which were inadequate to cover its fixed monthly expenditures for that month of $478,000. (Affidavit of Culp and Mayhew, para. 9.)

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over all parties and the subject matter of this action. 28 U.S.C. §§ 1331, 1361, 2201 and 2202, and 5 U.S.C. §§ 702, 705 and 706.

2. The Navy violated Section I, Part 6, of the Armed Services Procurement Regulation by placing Horne on the Joint Consolidated List of Debarred, Ineligible and Suspended Contractors on the basis of mere "substantial reason to believe" as opposed to "adequate evidence," as that term is defined at ASPR § 1–605.

3. The Navy violated Section I, Part 6, of the Armed Services Procurement Regulation by placing Horne on the Joint Consolidated List of Debarred, Ineligible and Suspended Contractors on the basis of an allegation that Horne "had been giving gratuities and favors to Naval personnel assigned to official contractual or inspection duties," since that act is nowhere specifically proscribed in the Regulation and the notice does not allege the commission of any of the offenses set forth at ASPR § 1–605.-1(i) (c), or "any other offense" as that term is used therein.

4. Horne is a "small business concern," as that term is defined in ASPR § 1–701.1.

5. The Navy's letter of December 14, 1971, contained a determination that Horne was not a responsible contractor since it did not have a satisfactory record of integrity, as that term is used in ASPR § 1–903.1(iv).

6. ASPR § 1–903.1(iv) has a mandatory reference to ASPR § 1–7054 [sic] (c) (vi) in the case of a small business concern.

7. The Navy violated ASPR § 1–705.4(c) (vi) by determining that Horne, a small business concern, was not responsible because of a lack of business integrity, as defined in ASPR § 1–903.-1(iv) without providing substantial evidence documented in the contract files to the appropriate SBA Regional Office, and to the appropriate departmental Small Business Advisor.

8. Section I, Part 6, of the Armed Services Procurement Regulation, is issued by the Assistant Secretary of Defence (Installations & Logistics) by

direction of the Secretary of Defense under the general authority of Chapter 137 (Title 10 of the United States Code). No specific statutory authorization for the debarment and suspension regulation exists otherwise; and both debarment and suspension are administrative determinations stated to be discretionary with the Secretary of a Department or his designee.

9. Section I, Part 6, of the Armed Services Procurement Regulation, as it deals with debarment and suspension, on its face, and as applied to Horne, does not establish adequate standards for placement on the list of debarred, ineligible and suspended contractors.

10. Section I, Part 6, of the Armed Services Procurement Regulation, as it relates to debarment and suspension, on its face, and as applied to Horne, fails to establish adequate procedures, including notice of specific charges, the opportunity to present evidence and to cross examine adverse witnesses, and does not culminate in administrative findings and conclusions based upon a record so made.

11. Promulgation of Section I, Part 6, of the Armed Services Procurement Regulation and its application to Horne exceeds the Defendants' statutory authority.

12. Section I, Part 6, of the Armed Services Procurement Regulation, on its face, and as applied to Horne, purports to deny Horne, a DOD contractor, the opportunity to continue to participate in DOD contracts without benefit of notice or hearing, and as a result, violates the due process requirements of the Fifth Amendment to the United States Constitution.

13. Because of the violations of law in this case, and upon the Findings of Fact, *supra*, there was no valid, legal basis for the Navy's refusal to allow Horne to perform the work called for under the IFB either as a prime or subcontractor.

14. Inasmuch as Horne, the low bidder on the IFB, was denied a contract on the basis of invalid and illegal action by the Defendants in this procurement, there is a very strong likelihood of success by Horne in its Protest with the GAO, and ultimately in this Court.

15. There is no adequate remedy at law. In particular, suit in the Court of Claims, where theoretically available relief is restricted to proposal preparation costs, is clearly not an adequate remedy in this case.

16. Horne has suffered and is suffering irreparable damage, in that the sudden loss of all of its Department of Defense business after many years of almost complete reliance on such business has left Horne in a position from which it may not be able to recover without some action by the Court at this time.

17. Since the Government reserves the right under its contracts to terminate work at its convenience, no substantial harm will be suffered by Metro if the work is turned over to Horne.

18. The public interest and scrupulous adherence to the letter and spirit of the law and policy demanding absolutely fair and valid official conduct in competitive procurements for Government contracts militates for the grant of the motion for preliminary injunction.

19. According full and proper weight to all pertinent factors and considerations, including the decisions of the Court of Appeals in, *inter alia*, Wheelabrator Corporation v. Chafee, Secretary of the Navy et al., D.C.Cir., 455 F.2d 1306, Opinion filed October 14, 1971, M. Steinthal and Co., Inc., v. Seamans, Jr., Secretary of the Air Force, D.C.Cir., 455 F.2d 1829, Opinion filed October 14, 1971, Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970), and most recently, Murray v. Kunzig, D.C.Cir., 462 F.2d 871, Opinion filed February 29, 1972, this Court has concluded that a preliminary injunction should be issued directing Defendants to order the cessation of perform-

ance of the work called for under the IFB pending the GAO decision and the Navy's action in accordance with that decision.