**Fred B. SHELTON, III, et al.,
Plaintiff-Appellants
Cross-Appellees,**

v.

**CITY OF COLLEGE STATION, et al.,
Defendants-Appellees
Cross-Appellants.**

No. 83–2765.

United States Court of Appeals,
Fifth Circuit.

March 11, 1985.

Nelkin & Nelkin, Stuart Nelkin, Rose Ann Reeser, Houston, Tex., for plaintiff-appellants cross-appellees.

Woodard, Hall & Primm, William B. Butler, Houston, Tex., Cathy Locke, ACA, College Station, Tex., for defendants-appellees cross-appellants.

Before RUBIN, TATE, and HILL, Circuit Judges.

TATE, Circuit Judge:

The plaintiffs Shelton and Jones appeal from the dismissal of their suit for damages against defendants who allegedly caused them to suffer monetary losses as a result of the defendants' unconstitutional actions under color of state law. 42 U.S.C. § 1983. Made defendants were: the City of College Station, Texas; the members of the city-created Zoning Board of Adjustment for that municipality; and the city planning director. The alleged unconstitutional actions consisted of the arbitrary and discriminatory denial of a zoning variance for the plaintiffs' business property, despite the routine grant of similar requests as to neighboring and other business property in the area.

On the basis of depositions, affidavits, and other exhibits, the district court granted the defendants' motion for summary judgment. The district court did so on the basis that the refusal to grant the variance was not shown to be arbitrary and capri-

cious or to be absent good faith. We reverse and remand. Summary judgment was improvidently granted because the factual showing raises genuine issues of disputed fact as to whether the denial of the variances was arbitrary and discriminatory, and as to whether the individual defendants were in good faith so as to be entitled to a qualified immunity for their actions.

## I.

The plaintiffs had a property interest in a building across the street from the university in College Station.[1] Desiring to conduct a business on the premises, they unsuccessfully applied four times to the City's Zoning Adjustment Board ("the Board") for a variance from the city zoning's off-street parking requirements. The reasons for the denials were based upon traffic congestion and parking problems in the area. However, the city director of planning admitted that almost every business in the university area at the time was not meeting the parking requirements, and that at least four parking variances had recently been granted by the Board for businesses in that area, despite the opposition of the. city's planning department. Deposition of Mayo, 12–14, 49–63. The city planning director admitted that these grants of parking variances were inconsistent with the denial of the plaintiffs' application for variance. *Id.*, p. 49. The record also contains minutes of the Board showing the grant of various parking variances to other businesses in the immediate area of the plaintiffs' property. Further, a subsequent occupier of the plaintiffs' property had been granted a variance of the parking requirements by the Board. R. II, 190–191.[2]

In granting summary judgment, the district court relied upon *Couf v. DeBlaker*, 652 F.2d 585 (5th Cir.) *cert. denied*, 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1981), as providing a standard that in a § 1983 action for damages a federal court may consider only " 'whether the action of the zoning commission is arbitrary and capricious, having no substantial relation to the general welfare.' " 652 F.2d at 588. The district court then held that, under that standard, although "there may be some inferences", in the record, and "there may be a scintilla of evidence" in the record, nevertheless, "the fact remains that there is no evidence that the refusal to grant the variance in this case was arbitrary and capricious."

■ In granting summary judgment, the district court thus inadvertently referred to the standard for granting a directed verdict or judgment notwithstanding the verdict, after full development of the evidence. *Boeing Company v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc). However, a different standard applies before, on a truncated summary-judgment factual record, a district court may by summary judgment deny a party a trial on the merits with full evidence before the trier of fact. As we recently summarized in *Hood v. Tenneco Texas Life Insurance Co.*, 739 F.2d 1012, 1014 (5th Cir.1984):

> [T]he summary judgment standard ... is a strict one, allowing the entry of summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c), *see, e.g., Transource Inter-*

---

**1.** One of the plaintiffs had leased the property, and entered into a partnership agreement with the other to operate a business on the premises. The variances were applied for by only one of the plaintiffs. No issue was raised below or in this court that this property interest was insufficient to entitle them to apply for a parking variance, or to have enforceable legal rights under state law for the arbitrary denial thereof.

**2.** We recognize that, on trial of the merits, full evidence may show justification for the denial of the plaintiffs' application and the grant of the others. For summary judgment purposes, however, the issue is whether the factual showing raises a genuine issue of material fact whether the Board's actions were arbitrary and discriminatory.

*national v. Trinity Industries, Inc.,* 725 F.2d 274, 279 (5th Cir.1984). Moreover in considering a motion for summary judgment, a court must draw all reasonable inferences in favor of the nonmoving party. *In re Municipal Bond Reporting Antitrust Litigation,* 672 F.2d 436, 440 (5th Cir.1982). However, once the moving party makes an initial showing that no genuine issue of material fact exists, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In reviewing a summary judgment on appeal, we apply the same standard as that used by the district court. *Transource,* 725 F.2d at 279.

■ By this standard, as our previous factual summary demonstrates, the factual showing in the record raises a genuine disputed issue of material fact, i.e., whether the Board acted arbitrarily and discriminatorily in denying the plaintiffs' application for a parking variance, but granting or permitting it as to almost all other businesses in the area, including to the successor to the plaintiffs' interest in the identical property for which they themselves had unsuccessfully sought a parking variance.

The summary judgment was therefore improvidently granted and must be reversed, unless the defendants can prevail on other contentions advanced before us and not reached by the district court. We will discuss these contentions in the following numbered parts of this opinion: II. No recovery is allowable as a matter of law for the denial of a variance from a zoning regulation; III. In any event, the defendant city is immune from liability for the actions of its Zoning Board of Adjustment; and IV. Further, the individual members of the Board and the city planning director, made defendants, are immune from liability for these acts as members of the Board.

## II.

The record demonstrates that a city zoning ordinance required businesses to furnish offstreet parking spaces of certain numbers, by criteria established in the ordinance. By an application to the Zoning Adjustment Board, a business operator was permitted to secure a modification or waiver of the offstreet-parking requirement. The effect of a denial of the variance application was to make illegal the operation of that business in those premises, unless the owner provided the requisite offstreet parking. However, as previously noted— the record most favorably supports the inference that, except in the case of the plaintiffs, the parking variances sought for businesses in that neighborhood were almost routinely granted, and that the offstreet parking requirements were not in fact enforced against businesses in that area.

■ The defendant city contends that, nevertheless, no action for damages sustained by the denial of a zoning variation, admittedly under color of state law, is cognizable under 42 U.S.C. § 1983. The city's contentions in this regard are two-fold: (a) given the limited scope of judicial review of zoning actions, the plaintiffs as a matter of law do not have a cause of action for the allegedly arbitrary and discriminatory denial of their request for a zoning variance; and (b) in any event, the denial of a zoning variation is not a deprivation of "property" within the protection of the Fourteenth Amendment, so as to entitle a person aggrieved thereby to sue·under 42 U.S.C. § 1983 for damages resulting of a violation of the plaintiffs' federal constitutional rights.

*As to (a):*

In *South Gwinnett Venture v. Pruitt,* 491 F.2d 5 (5th Cir.) (en banc), *cert. denied,* 419 U.S. 837, 93 S.Ct. 66, 42 L.Ed.2d 64 (1974), the en banc court established governing circuit principle. In their rejecting the claim of aggrieved owners that a rezoning regulation had offended the plaintiffs' Fourteenth Amendment rights, we stated that "[t]he only question which federal district courts may consider is whether the action of the zoning commission is arbitrary and capricious, having no substantial relation to the general welfare." 491 F.2d

at 7; *see also, Couf v. DeBlaker, supra,* 652 F.2d at 588. We also held that this principle applied, whether the zoning action was the adoption of a comprehensive zoning plan or (as there) the reclassification of a piece of property under an existing plan.

The en banc court in *South Gwinnett* then held that the zoning commissioners had established adequate reasons for their denial of reclassification to the plaintiffs. This holding, however, was in the context of an evidentiary hearing at which full opportunity to develop the factual basis of the claim was afforded. 491 F.2d at 6; *see* district court opinion, 342 F.Supp. 703, 705 (N.D.Ga.1972). Before so holding, however, *South Gwinnett* stated, preliminarily thereto, that "upon a factual showing of arbitrariness there must be [shown] some basis in fact or law to justify the zoning action as consistent with reasonableness." *South Gwinnett,* 491 *supra* at 7.

For purposes of summary judgment, this prong of the *South Gwinnett* test was not here met. In the present case, as we have previously noted, a genuine dispute of material fact is demonstrated as to whether the seemingly arbitrary denials of the parking variance were reasonably based in fact. Summary judgment was therefore precluded on this issue.

*As to (b):*

The plaintiffs' suit is founded on 42 U.S.C. § 1983, by which a federal cause of action is granted to those subjected under color of state law to a deprivation of rights under the federal constitution and laws. The defendants point out that no § 1983 action is shown unless the plaintiffs show a property interest protected by the Fourteenth Amendment, *Bishop v. Wood,* 426 U.S. 341, 343, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976), and that whether the plaintiffs possessed such property interest is to be determined by reference to state law, *id.*

The defendants argue that the denial of the zoning variance, even if arbitrary, did not deprive the plaintiffs of a "property" right under Texas law.

■ As stated in *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972):

Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

■ With regard to the right of an owner not to have his use of his property arbitrarily restricted, the defendants themselves admit, although in another context, that property-interest owners under state law can in Texas state courts obtain redress for actions of Zoning Boards of Adjustments, if they arbitrarily grant or deny variances that restrict the use of or affect their property. *Board of Adjustment of City of San Antonio v. Willie,* 511 S.W.2d 591 (Tex.Civ.App.1974; writ ref. n.r.e.); *Swain v. Board of Adjustment of City of University Park, Texas,* 433 S.W.2d 727 (Tex.Civ.App.1968; writ dism'd w.o.j.), *cert. denied,* 396 U.S. 277, 90 S.Ct. 563, 24 L.Ed.2d 465 (1970). Texas law in general recognizes a judicial remedy for a property owner aggrieved by an arbitrary and unreasonable zoning action by a municipal agency, *Hunt v. City of San Antonio,* 462 S.W.2d 536, 539 (Tex.1971), including where, through arbitrary and discriminatory exercise of the power to deny zoning applications, the municipal actor deprives the owner of a property interest of a business use of his property that is permitted to others similarly situated, *City of Austin v. Nelson,* 45 S.W.2d 692 (Tex.Civ.App. 1931), *City of Austin v. Deats,* 32 S.W.2d 685 (Tex.Civ.App.1930).

■ Thus, Texas law recognizes that the right of the owner of a property interest to use his property for a lawful purpose cannot be arbitrarily and discriminatorily restricted by governmental zoning action. This right, judicially enforceable under state law, is, in our view, sufficiently a property right—a "legitimate claim of en-

titlement," *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709—that the arbitrary deprivation thereof implicates an invasion of Fourteenth Amendment due process rights. *See, e.g., Perry v. Sinderman,* 408 U.S. 593, 599–603, 92 S.Ct. 2694, 2698–2700, 33 L.Ed.2d 570 (1972).

■ An additional related contention is made by the defendants. Whether or not a property right of the plaintiffs was violated, they contend that, nevertheless, no denial of due process occurred on which to base a § 1983 claim, because an adequate state remedy was provided by state law for this alleged wrong. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). We pretermit discussion of whether state law provides a *damage* remedy for deprivations of property through unconstitutional abuse of the zoning power; for (even if so), as we have held in *McCrae v. Hawkins,* 720 F.2d 863, 870 (5th Cir.1983), the principle established by *Parratt* does not apply when the plaintiff's claim is based either upon deprivation of a liberty interest or (as here) upon the intentional deprivation of a property interest "pursuant to established state procedure." *Hudson v. Palmer,* —— U.S. ——, ——, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984); *Augustine v. Doe,* 740 F.2d 322, 328–29 (5th Cir.1984).

### III.

The defendant city further argues that, as a matter of law, it cannot be held liable for any arbitrary and discriminatory acts of its zoning adjustment board that may have offended the plaintiffs' federal constitutional rights. It relies upon the principle that a city may not be held liable under 42 U.S.C. § 1983 for injury inflicted by its employees or agents except where the latters' acts "may fairly be said to represent official policy." *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). *See also Bennett v. City of Slidell,* 728 F.2d 762 (5th Cir.) (en banc), *reh. den.,* 735 F.2d 861 (5th Cir.1984).

In the per curiam denying rehearing in *Bennett,* the en banc court for this circuit unanimously agreed on the statement of governing criteria by which a municipality's § 1983 liability is to be determined in accordance with this *Monell* principle:

A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy.

Official policy is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or *by an official to whom the lawmakers have delegated policy-making authority; or*

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

735 F.2d at 862 (emphasis added).

■ In the present case, the defendant city is liable for injury inflicted by unconstitutional acts of its zoning adjustment board, for the city lawmakers had delegated exclusive policy-making authority to that Board with regard to the grant or denial of variances from the city's zoning regulations. The College Station Zoning Board of Adjustment was established by ordinance of the city council, as authorized by Vernon's Tex.Rev.Stat. art. 1011g (1984 Supp.). Under that statute, and under the municipal ordinance adopted as authorized thereby, the Board—created by the city council, and its members appointed by it— is the sole municipal authority by which variances from the general municipal zoning ordinances may be granted. The

Board's grant or denial of a variance is not subject to review by the city council. Any persons aggrieved by any decision of the Board may appeal solely to the courts for relief from any illegal action of the Board.

■ As summarized in *Board of Adjustment of the City of San Antonio v. Willie, supra,* 511 S.W.2d at 593:

A Board of Adjustment acts as a quasi-judicial body, having no statutory power to legislate. It is restricted in its decisions to the powers vested in it by the legislature and city council. It may not materially alter the specific intent and extent of the zoning ordinance as this power is within the province of the city council.

*See,* to same effect, *Swain v. Board of Adjustment of the City of University Park, supra,* 433 S.W.2d at 731.

The Board of Adjustment is thus the exclusive agency of the city to administer the city's policy. It is the official agency to which "the [city] lawmakers have delegated policy-making authority," *Bennett, supra,* 735 F.2d at 862, with regard to the grant or denial of zoning variances. Accordingly, the city is liable for injury caused by unconstitutional acts of its agent, the Board. *See also Thomas v. Sams,* 734 F.2d 185 (5th Cir.), *reh. den.,* 741 F.2d 783 (5th Cir.1984).

### IV.

The defendant members of the Board also claim immunity for their discretionary acts in administering the city's zoning-variance policy. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ A public official may, however, be held liable if he violated constitutional or statutory rights that were clearly established at the time he acted such that a

reasonably competent official should have then known the rules of law governing his conduct, *unless* the official pleads and proves in his defense extraordinary circumstances by virtue of which he neither knew nor should have known of the relevant legal standard. *Id.,* 457 U.S. at 819, 102 S.Ct. at 2739. Applying this standard, summary judgment dismissing the action against the Board members individually was precluded by the disputed factual issue as to whether they arbitrarily and discriminatorily denied the plaintiffs' requests for zoning .variances. If indeed they did so, they violated clearly established constitutional standards and rules of law, of which reasonably competent officials should have known.

■ A different result obtains, however, as to Al Mayo, the city planning director, also sued as defendant. The city planning director administered the processing of applications for zoning variations and made recommendations to the Board, when brought before it, for the Board's grant or denial. The record without dispute shows that Mayo consistently opposed the grant of variances to others in the neighborhood, on the ground that grant of the variances was contrary to city zoning policies, although the Board overrode his recommended denials. His action in recommending the denial of the plaintiffs' applications was consistent with his shown attempted non-discriminatory enforcement of the city's variance policy, as he viewed it. The summary judgment dismissing the action against him should be affirmed.

### V. *Other Issues*

Two subsidiary issues remain:

■ *Procedural Due Process.* The plaintiffs contend that they were denied procedural due process because Bailey, a member of the Board who opposed the grant of the plaintiffs' applications for variance, was a member of a church that opposed the variances. The showing made falls far short of establishing a factual issue as to the claimed denial of procedural

due process (allegedly the lack of a fair hearing before an impartial fact-finder). For one reason, among others sustaining the district court's dismissal of this claim by the defendants, Bailey's mere membership in a church that also opposed the grant of the variances does not by itself establish bias, nor raise an issue as to an "irrevocably closed mind" that might justify his disqualification from the hearing, *see Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 701, 68 S.Ct. 793, 803, 92 L.Ed. 1010 (1948); K. Davis, Administrative Law Treatise § 19.2 (2d ed. 1980)— even if we concede (as we do not) that the failure of one of five commissioners to disqualify himself because of bias somehow contributed to a denial of procedural due process in violation of the Fourteenth Amendment. The summary judgment dismissing the claim of denial of procedural due process is affirmed.

■ *Cross-Appeal: Attorney's Fees:* By their cross-appeal, the defendants contend that the district court erred in denying them attorney's fees, 42 U.S.C. § 1988, against the plaintiffs for their instituting this allegedly frivolous § 1983 suit. Attorney's fees should not be awarded against plaintiffs in unsuccessful § 1983 suits unless the " 'action was frivolous, unreasonable, or without foundation.' " *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980). The cross-appeal is mooted by our reversal.

*Conclusion:*

For the reasons assigned, therefore: we AFFIRM the dismissal of the action against the defendant Mayo; we AFFIRM the grant of partial summary judgment dismissing the plaintiffs' claim of a denial of procedural due process; we AFFIRM the denial of attorney's fees; but we otherwise REVERSE the judgment dismissing the plaintiffs' action, and we REMAND this case for further proceedings consistent with this opinion. The defendants (except for Mayo) are assessed with costs.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.