**Isaac MANEGO, Plaintiff, Appellant,**

v.

**CAPE COD FIVE CENTS SAVINGS BANK, Defendants, Appellees.**

No. 82–1414.

United States Court of Appeals, First Circuit.

Argued Sept. 15, 1982.

Decided Oct. 28, 1982.

Charles R. Weidman, Chatham, Mass., for plaintiff, appellant.

Samuel Hoar, with whom Kenneth A. Cohen, Laura L. Carroll, Catherine E. Sullivan, and Goodwin, Procter & Hoar, Boston, Mass., were on brief, for defendants, appellees Cape Cod Five Cents Savings Bank, Inc., et al.

Albert P. Zabin, with whom Schneider, Reilly, Zabin, Connolly & Costello, P.C., Boston, Mass., was on brief, for defendants, appellees Gaston L. Norgeot, et al.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Isaac Manego brought suit, under 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988, 2000e *et seq.*, § 3605 of the Fair Housing Act, and Mass.Gen.Laws c. 151, § 4(3B), against the Cape Cod Five Cents Savings Bank (Bank); its president, George Marble; the manager of its Orleans branch, David Willard; the members of the Orleans Board of Selectmen, Gaston Norgeot, Herbert Wilcox and Thomas Nickerson; and Paul Thibert, who obtained an entertainment license from the

Selectmen.[1] The substance of the plaintiff's complaint is that the defendants conspired to deny him a license to build a disco in Orleans because he is black.

The salient allegations of the complaint are as follows. Plaintiff applied to the Board of Selectmen for a license to build his proposed disco. In January and February of 1979, public hearings were held at which "a state of aggression and hostility was created against the plaintiff." Also in February of 1979, the individual defendants met together to organize and carry out a plan to prevent him from carrying out his disco plans. During the same period, the bank defendants hired attorneys and encouraged individuals to appear before the Board of Selectmen to oppose the plaintiff's license. On February 22, 1979, the Board of Selectmen denied the license. On February 23, 1979, unknown persons set fire to a building plaintiff owned. On May 16, 1979, the bank brought suit to enjoin plaintiff from constructing a building in the Town of Orleans. On June 1, 1979, the bank defendants secretly sought to block plaintiff's supply of construction materials. On July 16, 1979, the Board of Selectmen granted an entertainment license "of the type sought by plaintiff to the Lower Cape Sports Arena operated by Paul M. Thibert, a White person."

On September 22, 1981, the district court held a hearing on motions to dismiss by the private defendants and motions for summary judgment by the defendant Selectmen. The defendant Selectmen argued that the claims under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988, were barred by the doctrines of res judicata and collateral estoppel. The plaintiff had petitioned the Superior Court for the Commonwealth of Massachusetts for a writ of mandamus compelling the Board of Selectmen of the Town of Orleans to issue him a license. The Massachusetts court dismissed the complaint for failure to state a claim. The district court rejected the defendants' res judicata and collateral estoppel argument "[s]ince the claims made here were neither fully argued or adjudicated in the state proceeding." [2]

The district court did not rule on the defendant Selectmen's motions for summary judgment. It addressed, instead, the failure of the plaintiff to make legally sufficient allegations of a conspiracy, without which the claim against the private defendants could not stand. Reluctant to dismiss the complaint, the court determined that

"[plaintiff] should be allowed to provide the court with the facts which he asserts will support his claim of a conspiracy designed to deprive him of his civil rights. I, therefore, will allow the plaintiff 90 days to present, either by way of affidavit or by other means, concrete, factual bases for his allegations of conspiracy. At that time defendants may again seek dismissal and/or summary judgment."

Seven months later the district court ruled on renewed motions to dismiss or for summary judgment. In support of his claim, plaintiff had submitted two personal affidavits. One, based "upon information and belief", set out the details of the conspiracy as the plaintiff saw them. The

---

1. The district court dismissed the claim under section 3605 of the Fair Housing Act because the section applies to the granting of loans for the purchase or construction of a dwelling, a situation clearly not presented in the plaintiff's complaint. It dismissed the claim under Mass. Gen.Laws c. 151B, § 4(3B), because the plaintiff had not alleged that he applied for and was discriminated against in the granting of a mortgage loan. It dismissed the claim under 42 U.S.C. § 2000e *et seq.*, because nothing in plaintiff's complaint indicated a basis for a claim of employment discrimination. On appeal, plaintiff does not challenge any of these rulings by the district court.

2. Defendant Selectmen renew their res judicata defense on appeal. Although our decision that the district court's grant of summary judgment in favor of all of the defendants was proper makes a decision on that question unnecessary, we consider it appropriate to point out that the proper test for the applicability of res judicata is not whether the plaintiff in fact argued his constitutional claims in the state proceeding, but whether he could have. *Lovely v. Laliberte,* 498 F.2d 1261, 1263 (1st Cir. 1974).

other explained that he was unable to produce direct evidence of the conspiracy "as only the Defendants have the requisite personal knowledge", but that he expected the facts to become evident after cross-examination of hostile witnesses at trial. Plaintiff had also submitted the affidavit of Roger Hulick, a building contractor employed by the plaintiff to construct the disputed disco. Hulick's affidavit contained a hearsay statement indicating that the Cape Cod Five Cents Savings Bank had requested that Nickerson Lumber Co. not supply Manego with building materials, a statement that unnamed persons had uttered racial slurs against him because of his association with the plaintiff, observations of Manego's house after it was set afire by unknown persons, and a vague suggestion that his treatment at the bank had been adversely affected by his association with the plaintiff.

The district court carefully reviewed all of the evidence introduced by plaintiff, including the affidavits described above and plaintiff's deposition taken by the defendant Selectmen and filed on December 22, 1980. It also examined these affidavits submitted by defendants Willard and Nickerson in support of the motion for summary judgment. The court found that the affidavits provided affirmative evidence that at no time was race a factor in the opposition to or consideration of plaintiff's application for a license. The court concluded that

> "[m]aking every inference favorable to the plaintiff, one still is forced to conclude that the plaintiff has failed to set forth even the promise of evidence that would show involvement by any of these defendants in a conspiracy, sufficient to create a genuine issue for trial. The theory of liability advanced by the plaintiff has been unsupported despite the fact that the court originally granted 90 days to supply affidavits or other foundation material in the form of answers to interrogatories, depositions, or motions for production of documents.

> "However sympathetically one might look at the complaint of the plaintiff, the

motions for summary judgment must be, and are hereby granted."

■ We affirm the district court's judgment. *First National Bank v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), involved a similar effort by a plaintiff to infer an illegal conspiracy, in that case to prevent him from buying and selling Iranian oil, from the fact that the defendant traded with someone else. The Court acknowledged that "the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence." The Court insisted, however, that

> "[w]hat Rule 56(e) does make clear is that a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him . . . .

> "Essentially all that the lower courts held in this case was that Rule 56(e) placed upon [the plaintiff] the burden of producing evidence of the conspiracy he alleged only after respondent . . . conclusively showed that the facts upon which he relied to support his allegation were not susceptible of the interpretation which he sought to give them. That holding was correct." *Id.* at 288–89, 88 S.Ct. at 1592.

In this case, plaintiff sought to infer the existence of an illegal conspiracy from the fact that the Selectmen granted a license to someone who was white but not to plaintiff, who was black. His inference is supported only by affidavit evidence of a general racial animus in the community. The fact that a group of private citizens, organized as the Orleans Board of Trade, voted unanimously to oppose his license and that members of the Board of Selectmen may have attended the meeting[3] establishes nothing about the motivation of those individuals in opposing his license. The defendants countered his inference with an explanation of the difference between his disco and the skating rink which was granted a license. According to the affidavit of David Willard,

---

3. As the defendants point out, plaintiff offered only hearsay evidence that members of the Board of Selectmen attended the Board of Trade meeting.

"Mr. Manego's proposed disco, as explained to the residents of the town of Orleans, involved a disco that would attract a clientele of adults, would serve liquor, and would be open late into the evening on weekdays and weekends. The ice skating rink, by contrast, was a facility used almost exclusively by children under the age of sixteen. For most functions at the ice skating rink, only children under the age of sixteen were allowed admittance, and identifications were checked at the door. The rink was open weekdays until 11:00 p.m. and closed at midnight on weekend nights."

In the face of this explanation, plaintiffs' promise that circumstantial evidence would emerge at trial could not withstand the defendants' motion for summary judgment. *Adickes v. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1969), is not to the contrary. In that case there was no question that petitioner had been denied service at respondent's restaurant because she was a white woman in the company of a group of black children. The issue on which the court below granted summary judgment was the existence of a conspiracy between one of appellant's employees and a police officer. Had petitioner in this case provided sufficient facts to create a material issue as to whether the denial of his license was because of his race, we would, as did the Court in *Adickes,* look unfavorably on a refusal by the lower court to allow him to pursue his claim that the denial was the result of a conspiracy. Since he did not provide any support for his inference of discrimination, we have no basis for rejecting the trial court's determination that by showing that the facts upon which appellant relied to support his allegation were not susceptible of the interpretation which he sought to give them, appellees met their burden of showing the absence of any genuine issue of material fact.[4] We echo the frustration of the district court:

"The plaintiff has had ample opportunity to take the depositions of any individuals whom he wished to depose. That opportunity has been present since the entry of my original order, and yet nothing has been done by the plaintiff. No discovery has been taken in the form of motions to produce documents, interrogatories, or depositions of non-party witnesses."

In short, he simply did not make out his case.

We recognize that, to a lay person, aggregating all of the circumstances of plaintiff's case—the denial of his license, the granting—a half year later—of a license to a white man, the fact that someone set fire to his property, and rumors that unnamed persons had uttered racial slurs—might suggest the old adage that where there is smoke, there is fire. In this case, however, the district judge invited the plaintiff to lead him to at least some glowing embers and plaintiff failed to do so. The district court recognized, properly, that smoke alone is not enough to force the defendants to a trial to prove that their actions were not discriminatory.

*The judgment of the district court is affirmed.*

---

**4.** *Cf. Mack v. Cape Elizabeth School Board,* 553 F.2d 720 (1st Cir. 1977), where the defendants' affidavits failed to address the real issue in the case and thus left a material issue of fact for the jury to decide.