Charles F. CUTTING, Plaintiff,
Appellant,

v.

Robert MUZZEY, et al., Defendants,
Appellees.

No. 83–1544.

United States Court of Appeals,
First Circuit.

Argued Dec. 7, 1983.

Decided Jan. 10, 1984.

---

William H. Hopkins, Plymouth, N.H., with whom Ray & Hopkins, P.A., Plymouth, N.H., was on brief, for plaintiff, appellant.

H. Bernard Waugh, Jr., Hanover, N.H., with whom Laurence F. Gardner, Law Office of Laurence F. Gardner, Hanover, N.H., Matthias J. Reynolds, and Devine, Millimet, Stahl & Branch, Manchester, N.H., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.

COFFIN, Circuit Judge.

Plaintiff, a developer, brought a civil rights action against the members of a town planning board, alleging that they violated the Constitution's guarantees of due process and equal protection by imposing "outrageous conditions"[1] on the development of plaintiff's subdivision. Plaintiff alleges that the board's action was motivated by racial animus towards the plaintiff's purchasers, all of whom had Italian surnames.

The district court dismissed the complaint on the ground that plaintiff, apparently not being of Italian origin, lacked standing to assert the equal protection rights of his present and prospective Italian surnamed customers. Defendants-appellees support the judgment below, asserting that the court correctly applied the law as to standing, that the complaint should have been dismissed for its lack of particularity, and that in any event the defendants had absolute immunity. We are unable to affirm on this record and must remand for further proceedings.

As to the issue of standing, we deem our opinion in *Des Vergnes v. Seekonk Water District,* 601 F.2d 9 (1st Cir.1979), dispositive. In that case a developer of a subdivision that was intended to accommodate low-income and/or black persons alleged that his subdivision had been denied inclusion in a town water district for a racially discriminatory reason. We held, relying on *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), and other cases, that the developer had standing to assert a right of action under 42 U.S.C. § 1981 for interference with his right to contract with non-whites. The fact that the present action is based on 42 U.S.C. §§ 1983, 1985, and 1988 does not present a meaningful distinction. *See, e.g., Novotny v. Great American Federal Savings & Loan Assoc.,* 584 F.2d 1235, 1244–45 (3d Cir.1978) (en banc), *vacated on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). Nor do we accept appellees' argument that *Des Vergnes* (which unfortunately was not called to the attention of the district court) applies only when there is no "minority plaintiff who could bring an action in his own right". We need only point to *Sullivan v. Little Hunting Park, supra,* where the fact that there was an identified minority plaintiff, Freeman, who could have brought an action did not affect the standing of the white plaintiff, Sullivan. We therefore conclude that the district court erred in dismissing the action for lack of standing.

If any other reason is amply revealed by the record to support the judgment of dismissal, appellees may of course rely on it. In this case they assert that the complaint is merely conclusory, lacking even the minimal factual allegations necessary to state a cause of action. They cite *Kadar Corp. v. Milbury,* 549 F.2d 230 (1st Cir.1977), *Slotnick v. Garfinkle,* 632 F.2d 163 (1st Cir.1980), and *Dewey v. University of New Hampshire,* 694 F.2d 1 (1st Cir. 1982), in support of that proposition. All of the cited cases involved allegations of some

---

1. Specifically, the Planning Board decided to condition approval of plaintiff's subdivision on completion of a subdivision road rather than to accept a bond or mortgage on the property as a guarantee of the road's completion.

action adverse to plaintiff combined with an undocumented and conclusory allegation of bad motive. There, as in *Manego v. Cape Cod Five Cents Savings Bank,* 692 F.2d 174 (1st Cir.1982), the complaints were premised on the notion "that where there is smoke, there is fire." But, as we wrote in *Manego,* "smoke alone is not enough ..."; there must be "at least some glowing embers...." 692 F.2d at 177. Here there is a glowing ember. In addition to the the the allegations that plaintiff's customers possessed Italian surnames and that the Planning Board changed its position to impose more burdensome conditions on plaintiff than on others, there was the specific allegation that the defendants' attorney had acknowledged "that said Planning Board was aware of and impliedly motivated by the fact that the Plaintiff 'won't sell to anyone but Italians'." This seems enough, even if barely so, to require further exploration at least to the extent permitted by summary judgment procedure.

■ Appellees' major defense of the judgment below rests on the proposition that they have absolute immunity from damage suits. We deal briefly with appellees' argument. In so doing, we must not lose sight of the precise action of the Planning Board that is targeted by the complaint. It is not the enactment of an overall plan or the establishment of general policy, both of which could be said to be legislative in nature. Nor is the action one of determining that some sort of sanction should be imposed for violation of a plan, permit, or license. In such a case the action might be said to be adjudicative. In our case the Planning Board merely decided to insist on completion of a particular road before granting approval of a specific proposed subdivision.

Appellees have relied heavily on *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), where the Court accorded absolute immunity to the members of a regional planning commission "to the extent ... that ... [they] were acting in a capacity comparable to that of members of a state legislature", 440 U.S. at 406, 99 S.Ct. at 1179, while expressly reserving the question whether individuals performing legislative functions at the local level should also be afforded such immunity from damages claims, 440 U.S. at 404 n. 26, 99 S.Ct. at 1178 n. 26. Even if we were willing to apply *Lake Country* to a more local level, this would not assist appellees, as we are unable to equate their action here with legislative activity.

We find persuasive the analysis in *Developments in the Law—Zoning,* 91 Harv.L. Rev. 1427, 1510–11 (1978), which suggests two tests for distinguishing between legislative and administrative activity. The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are "legislative facts", such as "generalizations concerning a policy or state of affairs", then the decision is legislative. If the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the "particularity of the impact of the state of action". If the action involves establishment of a general policy, it is legislative; if the action "single[s] out specifiable individuals and affect[s] them differently from others", it is administrative. Measured by either of these tests, it is clear that the Planning Boards rejection of the developer's mortgage in this case was an administrative act.

All but one of the cases cited by appellees from courts of appeals are inapposite.[2] They all involve enacting or vetoing general ordinances, actions that are clearly legislative activity. *Kuzinich v. County of Santa Clara,* 689 F.2d 1345 (9th Cir.1983) (enactment of zoning ordinance dealing with

---

**2.** So, too, are all the cases cited from district courts with one possible exception: *Burris v. Willis Independent School District,* 537 F.Supp. 801 (S.D.Tex.1982), in which a school board's action in refusing to renew an administrator's employment contract was held, without analysis, to be protected by absolute immunity. The court inexplicably proceeded nevertheless to devote most of its analysis to support its holdings that there were no property, liberty, or First Amendment interests implicated.

adult book stores); *Hernandez v. City of Lafayette,* 643 F.2d 1188 (5th Cir.1981) (mayor's action in vetoing ordinance); *Bruce v. Riddle,* 631 F.2d 272 (4th Cir.1980) (general ordinance barring multi-family dwellings); *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607 (8th Cir.1980) (enactment of city ordinance).

The solitary exception, cited at oral argument, is *Ramsey v. Leath,* 706 F.2d 1166 (11th Cir.1983) where the court, in affirming a district court's summary judgment, held that the action of a mayor and two councilmen in voting to demote plaintiff police officers from sergeants to patrolmen was based on just cause and that unsupported allegations of anti-union animus did not create an issue of material fact. In a footnote the court observed in dictum, citing *Lake Country* and *Hernandez,* that since appellees had voted for the demotions in good faith, "summary judgment could have been granted on the alternate ground of immunity". 706 F.2d at 1169 n. 2. Reference to good faith suggests that the court was thinking of qualified immunity. To the extent that the references to *Lake Country,* and *Hernandez* suggest that the court was thinking of absolute immunity, we respectfully disagree; the vote in *Ramsey* does not seem to be action comparable to that of state legislators (*Lake Country*) or a "policy-making decision of an individual elected official" (*Hernandez,* 643 F.2d at 1194).

Appellees endeavor weakly to claim judicial immunity for the Planning Board's action, citing *Reed v. Village of Shorewood,* 704 F.2d 943 (7th Cir.1983), a case affording judicial immunity to a local liquor commissioner, who had revoked a liquor license. There the court noted that the decisions of the liquor commissioner are subject to the same standards that apply to the decisions of other "first-line adjudicator[s]", such as trial judges. 704 F.2d at 951. Specifically, the court noted that the liquor commissioner can revoke a license only if he finds that a licensee has broken the law, that he may make that finding only after notice and hearing, that he must make and maintain a written record of all proceedings and evidence, and that his decision is subject to

substantial evidence review. This catalogue of factors is similar to that relied on by the Court in *Butz v. Economou,* 438 U.S. 478, 513, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1978), where the Court held that an administrative law judge is "functionally comparable" to a judge. Both cases are a far remove from the routine exercise of administrative discretion involved in the case at bar, an exercise untrammeled by any requirements as to hearing, precise standards, a record of evidence, and substantial evidence review.

In sum, were appellees to be accorded absolute immunity, there would be little need or room for the invocation by public officials of qualified immunity. Such a result would run counter to the Court's recent declaration that "qualified immunity represents the norm" for most government officials. *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2733, 73 L.Ed.2d 396 (1982). And so we vacate the judgment of dismissal and remand for further proceedings. Such proceedings need not necessarily involve a full trial; summary judgment is often appropriate.

*Judgment vacated; case remanded for further proceedings.*