**NESTOR COLON MEDINA & SUCE-SORES INC., Dr. Maximo J. Cerame Vivas, Mrs. Rita Maria Colon and the conjugal partnership formed between them, Plaintiffs,**

v.

**Patria G. CUSTODIO, Lina Dueño, and Santos Negron, individually and officially as Chairman, Vice–Chairman and Associate Member of the Puerto Rico Planning Board, respectively, and the Puerto Rico Planning Board, Defendants.**

**Civ. No. 89–1371 GG.**

United States District Court, D. Puerto Rico.

Feb. 8, 1991.

---

786

Gonzalez, Bennazar & Colorado, José R. García Pérez, Hato Rey, P.R., for plaintiffs.

Antonio Fiol Matta, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for defendants.

## OPINION AND ORDER

GIERBOLINI, District Judge.

Before the court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]

## I. INTRODUCTION

This is an action involving the denial of permits to build a hazardous and toxic waste disposal facility and a tourist residential complex by the Puerto Rico Planning Board. Pursuant to Title 42 U.S.C. § 1983,[2] plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, and costs and attorneys' fees for alleged violations of plaintiffs' rights of freedom of expression and association, and rights to substantive due process, procedural due process and equal protection of the laws as guaranteed under the First and Fourteenth Amendments of the United States Constitution.

Plaintiffs are Néstor Colón–Medina & Sucesores, Inc. ("Sucesores") and Dr. Máximo Cerame–Vivas, his wife Maria J. Colón, and their conjugal partnership. Sucesores owns a parcel of land of approximately 259.09 cuerdas [3] in Marueno Ward, Ponce, where it intended to develop a hazardous and toxic waste disposal facility and a domestic waste disposal facility. The Cerames owns a 1,248 square meter lot in Boquerón Ward, Cabo Rojo, where they intended to develop a tourist residential complex.

Defendants Patria Custodio, Lina Dueño and Santos Negrón, are, respectively, the Chairman, Vice–Chairman and Associate Member of the Puerto Rico Planning Board ("PRPB") of the Commonwealth of Puerto Rico. They are being sued in their individual and official capacities. The defendants were appointed to their respective positions in the PRPB by the current Governor of Puerto Rico, who is one of the leaders of the Popular Democratic Party (PDP). Co-plaintiff Dr. Cerame Vivas is a prominent member of the opposition party, the New Progressive Party (NPP).

The PRPB is an agency of the government of Puerto Rico organized pursuant to Law No. 75 of June 24, 1975, as amended, 23 L.P.R.A. § 62 *et seq.*, with the general purpose of guiding the integral development of Puerto Rico and promoting the general welfare in the use of land and other natural resources. *Id.* at § 62c. Under these powers, the PRPB approved Resolution JP–236, which requires persons seeking to develop projects in non-zoned areas to petition the Board for a permit approving the project.

## II. SUMMARY JUDGMENT

In determining whether summary judgment is appropriate, the court must view the record in the light most favorable to the party opposing the motion, and indulge all inferences favorable to that party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25,

1. Defendants' motion was referred to the Magistrate for report and recommendation, who on July 11, 1990, recommended that defendants' motion for summary judgment be granted. Plaintiffs filed timely objections to the Magistrate's Report and Recommendation. Section 636(b)(1)(C) of Title 28 provides that "[a] judge of the district court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."

2. Section 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.
 42 U.S.C. § 1983.

3. A cuerda is a Spanish measure equivalent to .97 acre. *Culebras Enterprises Corp. v. Rios,* 813 F.2d 506, 508 (1st Cir.1987).

106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628, 633–34 (1st Cir.1990); *Amsden v. Moran*, 904 F.2d 748 (1st Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989).

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) establishes that the party moving for summary judgment has the initial burden of showing "the absence of a genuine issue concerning any material fact." *Id.* at 159, 90 S.Ct. at 1609. *See generally* Louisell, Hazard & Tait, *Cases and Materials on Pleading and Procedure: State and Federal* 170 (6th ed. 1989) ("[A]s the Court stated in *Celotex*, the nonmoving party does not necessarily have to produce evidence in a form that would be admissible at trial. And, as the *Adickes* Court said, the nonmoving party does not have to adduce evidence at all until the moving party satisfies its initial burden of showing the absence of a genuine issue of fact"). If the movant shows that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-movant to establish the existence of a genuine material issue. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

For the purpose of deciding defendants' motion for summary judgment, we examine the facts in the light most favorable to the non-moving party, in this case, plaintiffs. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628, 633–34 (1st Cir.1990); *Roy v. Augusta*, 712 F.2d 1517 (1st Cir.1983). Applying this standard, and after an extensive review of the record, and according the non-moving party the indulgence required, we find that there are no disputed issues of fact precluding the entry of summary judgment in favor of defendants.[4]

## III. COUNT ONE: THE HAZARDOUS AND TOXIC WASTE DISPOSAL PROJECT

Pursuant to resolution JP–236, on December 10, 1985, co-plaintiff Sucesores filed a petition with the PRPB for a site permit on its parcel located north of Ponce to build two projects: a facility for the handling, treatment, recovery, destruction and disposal of hazardous and toxic waste and a facility for the treatment, recovery and disposal of domestic waste.

By resolution of January 29, 1986, the PRPB denied Sucesores' application for a site permit without a hearing. The toxic and hazardous waste facility was rejected on the grounds that the application was not in accord with Puerto Rico's land use and public policy for siting hazardous waste facilities. On February 12, 1986, Sucesores filed a petition for reconsideration of the January 29, 1986 resolution with the PRPB.

By resolution issued on March 6, 1986, the PRPB re-opened plaintiffs' application for a site permit. The PRPB requested

**4.** Plaintiffs contend that summary judgment is inappropriate when a party's intent or motive is an issue. We disagree. Although we exercise more restraint in granting a summary judgment motion where the discriminatory intent or motive of the defendant is an issue, we are not precluded from summarily dismissing a case with issues "involving state of mind, intent or motivation ..." *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 929 (1st Cir. 1983).

As discussed below, plaintiffs have failed to show that the defendants' intent or motive is a *genuine material* issue. *Cf. Chiplin Enterprises, Inc. v. Lebanon*, 712 F.2d 1524 (1st Cir.1983) ("The claim that denial of a permit was improperly motivated, unsupported by an allegation of the deprivation of a specific constitutional right, simply raises a matter of local concern, properly and fully reviewable in the state courts.").

from various federal and local agencies their official comments and observations concerning plaintiffs' proposed hazardous and toxic waste facility according to the procedures and public policy set forth in a 1983 document entitled "Public Policy and Criteria for the Siting of Hazardous and Toxic Waste Disposal Facilities."[5] The U.S. Environmental Protection Agency, the Fish and Wildlife Service of the U.S. Department of the Interior, the Soil Conservation Service of the U.S. Department of Agriculture, the President of the Environmental Quality Board, the Executive Director of the Commonwealth Solid Waste Management Authority and the Under–Secretary of the local Department of Natural Resources submitted letters of general approval for the hazardous and toxic waste facility. Nevertheless, these letters have no binding effect on the PRPB.

On September 2, 1986, the PRPB notified Sucesores that the proposed project fulfilled the criteria of necessity and convenience and the exclusive location criteria as stated in the "Public Policy and Criteria for the Siting of Hazardous and Toxic Waste Disposal Facilities." The PRPB requested additional information regarding the relative siting criteria, which Sucesores eventually submitted.

In the meantime, popular opposition to the construction of plaintiffs' hazardous and toxic waste disposal facility was increasing, particularly in the Ponce region. The Senate Committee on Health and Environment held hearings on the project on September 9, 11, 22 and 26 and November 15 and 18, 1986 and it issued a report rejecting Sucesores' project. The Senate opposition to the development of Sucesores' project was spearheaded by members of the PDP. On April 21, 1987, the PDP–Governor made public his opposition to the project. On January 15, 1987, the PRPB held a private meeting with government

agencies to evaluate Sucesores proposal and grade it according to the "Public Policy and Criteria for the Siting of Hazardous and Toxic Waste Disposal Facilities." PRPB ranks projects on a point basis; if a project scores over 200 points, the project is rejected. At this meeting, Sucesores' project scored 178.2 points. On February 10, 1987, engineer Sigfrido Garcia of the PRPB informed co-plaintiff Dr. Cerame Vivas that the PRPB would notify Sucesores of the next meeting to discuss the scope and content of the Preliminary Environmental Impact Statement (PEIS). Sucesores was never notified.

On June 23, 1987, the PRPB requested that Sucesores draft and submit a PEIS, which comprised twenty-seven specific items. On July 8, 1987, the PRPB denied Sucesores' petition for a scoping meeting regarding the PEIS. Approximately two weeks later, on July 21, 1987, Sucesores submitted before the PRPB an extensive document arguing against the additional PEIS requirements requested by PRPB on the ground that these requirements were design and construction requirements that should be reviewed at a later stage of the project. In addition, Sucesores argued that compliance with the additional PEIS requirements would constitute a heavy economic burden.

On September 17, 1987, Sucesores filed in the Puerto Rico Superior Court a petition for judicial review challenging the PRPB's request for additional requirements. Pursuant to an order issued by the Superior Court, the PRPB held a limited hearing on February 8, 1988 in which Sucesores, some intervenors, and several government agencies appeared.[6]

On September 9, 1988, a PRPB hearing examiner rendered a special report which the PRPB used to issue a resolution modi-

---

5. As explained more fully below, the PRPB also examined plaintiffs' application for compliance with the proper and efficient use of natural resources as set forth in a document entitled "Objectives and Public Policies of the Plan for the Use of Lands."

6. On May 31, 1988, Sucesores filed a motion before the PRPB bringing to its attention the undue delay in rendering a decision on the site application. On the same date, Sucesores filed an informative motion at the Superior Court regarding the PRPB's inaction. On August 10, 1988, the Superior Court issued an order urging the PRPB to render a decision.

fying, eliminating and adding new requirements to be met by Sucesores when submitting the PEIS. In compliance with this resolution, Sucesores filed a modified version of the PEIS.

On September 15, 1989, the PRPB notified Sucesores of a resolution issued on August 16, 1989, denying Sucesores' reconsideration motion filed on February 12, 1986. The resolution rejected Sucesores' project for fundamentally the same reasons for which it was originally rejected. The PRPB found that the project was in conflict with several of the public policies [7] which are part of the document entitled "Objectives and Public Policies of the Plan for the Use of Land" adopted by the PRPB and approved by the Governor pursuant to 23 L.P.R.A. § 62m. In particular, the PRPB found that the hazardous and toxic waste disposal facility posed a threat to the health and safety of the citizens of Ponce because it had the potential to pollute the surface and subterranean waters of Ponce. No findings of fact or conclusions of law were adduced to deny the domestic waste disposal project, but since the PRPB was considering the hazardous and toxic waste disposal facility application and the domestic waste disposal application as a joint project, it is obvious that it was rejected on the assumption that one project would not be built without the other.

## IV. COUNT TWO: THE TOURIST RESIDENTIAL COMPLEX

On September 20, 1988, co-plaintiff Cerame Vivas filed another site permit application before the PRPB to develop a tourist residential complex on a lot owned by the conjugal partnership formed between him and his wife. On September 28, 1988, the PRPB denied the site application indicating that it did not comply with conventional setback regulations and that the high population density in the area rendered construction of such a project unsound. On

November 4, 1988, the Cerames filed a petition for reconsideration of the permit denial and submitted a modified proposal to comply with the PRPB indications. By resolution of December 7, 1988, the PRPB reaffirmed its denial of the permit application.

As a result of this denial, the Cerames filed a petition for judicial review in the Superior Court, San Juan Part, of the PRPB's decision. The Superior Court ordered the PRPB to make findings of fact and conclusions of law.

On March 13, 1989, the PRPB met and issued a new resolution, reaffirming its original denial on the grounds that the sewer facilities in the area were not sufficient to accommodate the Cerame's project and that this condition made the project a risk to the environment. The Cerames sought review in the Superior Court, but the court declined to review PRPB's action. The Superior Court also denied a motion for reconsideration filed by the Cerames. The Cerames then sought review by the Commonwealth's Supreme Court, but it was denied. The Supreme Court also denied two motions for reconsideration.

Based on the above, plaintiffs allege that defendants violated their rights to substantive due process, procedural due process and equal protection of the laws guaranteed by the Fourteenth Amendment. In addition, plaintiffs contend that the defendants discriminated against them on the basis of their political affiliation in violation of their First Amendment rights.

## V. FAILURE TO STATE A SECTION 1983 CLAIM

Initially, we must determine whether taking plaintiffs' factual allegation in the complaint as true, the plaintiffs have failed to make out a federal claim under 42 U.S.C. § 1983.[8] *Chiplin Enterprises, Inc. v. Lebanon*, 712 F.2d 1524 (1st Cir.1983).

---

7. The PRPB held that Sucesores' proposed project was in conflict with Sections 17.00, 18.-00, and 18.01 of said document.

8. The Magistrate recommended the grant of qualified immunity to defendants and that

plaintiffs be barred from litigating the denial of the permit for the development of the tourist residential complex. In view of our disposition of the Section 1983 claim, we need not reach these issues.

■ The initial inquiry in a Section 1983 case focuses on two essential elements: (1) whether the conduct at issue was committed by a person acting under color of state law; and (2) whether this conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981).

■ The first requirement is easily met since plaintiffs are complaining of conduct committed by persons acting under Puerto Rico law. However, the more difficult question is whether plaintiffs have identified a constitutional right of which they have been deprived. First Circuit precedent establishes that a Section 1983 claim cannot be based on the denial of a permit like the ones in question, even if the denial was malicious, in bad faith, and for invalid or illegal reasons. *See Alton Land v. Town of Alton*, 745 F.2d 730 (1st Cir.1984); *Chiplin Enterprises Inc. v. Lebanon*, 712 F.2d 1524 (1st Cir.1983); *Roy v. Augusta*, 712 F.2d 1517 (1st Cir.1983).

## A. Procedural Due Process

■ To establish a violation of procedural due process under Section 1983, a plaintiff must show that (1) it has a protected interest and (2) it was deprived of that protected interest by a constitutionally defective procedure. *Logan v. Zimmermann Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982); *PFZ Properties, Inc. v. Rodriguez*, 739 F.Supp. 67, 71 (D.P.R.1990).

■ The essential constitutional requirement of procedural due process is that, before a person is deprived of property by the state, the affected individual must receive pre-deprivation notice and must be afforded a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976); *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991) ("When a procedural due process claim is advanced, the proper focus must be on the manner in which the state has acted: 'how and when' the alleged deprivation was effected.")

■ We first assume that plaintiffs have a property interest in the approval of permits for the development of the projects.[9] Courts have held that an entitlement of property interest may exist regarding a benefit which is sought but not yet obtained. *See, e.g., Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Plaintiffs allege that the PRPB delayed and denied their projects in violation of their right to procedural due process. In *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 832 n. 9 (1st Cir.), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982), the First Circuit rejected a claim analogous to plaintiffs' claim. A developer and his corporation (the "developers") bought land in the town of Bolton and submitted an application to the Bolton Planning Board (the "Board") to build a residential housing complex. Before buying the land, the developers had made preliminary inquiries and examined the town

---

**9.** The property interest in this case may be defined in two ways: (1) the plaintiffs' right to use the land they own or (2) the plaintiffs' right to the permit that is required for the use of the land. *RRI Realty Corp. v. Southhampton*, 870 F.2d 911, 916 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989).

 Judge Newman has thoughtfully argued that the inquiry as to whether a property interest exists in land use cases should be limited to a showing that the claimant owns the land he seeks to use, rather than focusing on whether the claimant has a clear entitlement to what he sought:

 It is not readily apparent why land regulation cases that involve applications to local regulators have applied the [*Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ] entitlement test to inquire whether an entitlement exists in what has been applied for—whether a zoning variance, a business license, or a building permit—instead of simply recognizing the owner's indisputable property interest in the land he owns and asking whether local government has exceeded the limits of substantive due process in regulating the plaintiff's use of his property by denying the application arbitrarily and capriciously. (Footnote omitted).

*RRI Realty Corp.,* 870 F.2d at 917.

of Bolton's zoning bylaws, rules and regulations. After numerous hearings and meetings, the Board rejected the developers' plan for several reasons, including the apparent reliance on a controversial environmental study. The developers brought suit in the state court challenging the rejection of their application. The state court remanded the case to the Board and ordered the developers to submit "a plan designating what acreage is to be open space" in the planned development. 680 F.2d at 828.

In the meantime, the Board had enacted new zoning laws which banned the type of lot and the design concept found in the developers' original plan. In light of these new zoning laws, the Board wrote to the developers and requested the submission of a "new subdivision plan ... not a revised print or revised original." 680 F.2d at 828. The developers never complied with the Board's request. After various attempts before the state court to hear their claims, the developers withdrew from the state judicial proceedings and brought an action in federal court against the municipal officers of Bolton and others alleging violations of 42 U.S.C. §§ 1983, 1985(3) and 1986.

The First Circuit found that the developers received procedural due process since numerous meetings and hearings were held regarding their proposed project. The developers argued that they had been denied due process by the Board's misapplication of the statutory and regulatory scheme. The First Circuit held that not every distortion of state law amounted to constitutional violations because

[if] such a theory [is] accepted, any hope of maintaining a meaningful separation between federal and state jurisdiction in this and many other areas of law would be jettisoned. Virtually every alleged legal or procedural error of a local planning authority or zoning board of appeal could be brought to a federal court on the theory that the erroneous application of state law amounted to a taking of property without due process. Neither Congress nor the courts have, to date, indicated that section 1983 should have such a reach.

680 F.2d at 831.

Similarly, in this case hearings and meetings were held on both projects and plaintiffs were allowed a meaningful opportunity to present their proposals. More importantly, plaintiffs were provided with a comprehensive remedy to correct any error in the proceedings before the PRPB because under Puerto Rico law, any party adversely affected "by an action, decision or resolution of the Puerto Rico Planning Board" is afforded both agency and judicial review. See 23 L.P.R.A. § 63d. When a state has enacted a remedial statutory scheme designed to rectify a legal error by a local administrative body, procedural due process has been provided, and "Section 1983 is not a means for litigating the correctness of the state or local administrative decision in a federal forum." Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 832 n. 9 (1st Cir.), cert. denied, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982).

Co-plaintiff Sucesores contends that the PRPB's failure to notify them of the meeting to discuss the scope and content of the PEIS shows that they were denied procedural due process. A similar argument was rejected by the First Circuit in Creative Environments, where the town failed to notify the developers of a public hearing to discuss their project. The First Circuit held that to hold that the due process clause requires more or better hearings "would be to place an unreasonable burden on [planning boards]." 680 F.2d at 830.

After examining the facts in the record in the light most favorable to plaintiffs, we find no basis to infer that they were denied their right to a fair and meaningful process. At most, plaintiffs have stated a claim that defendants rejected plaintiffs' proposals for erroneous reasons. This claim, however, does not implicate a due process violation. Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) (due process is not implicated by a state official's negligent act which causes unintended loss of injury to

life, liberty or property); *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984) (an unauthorized intentional deprivation of property by a state employee does not constitute a violation of procedural due process if a meaningful postdeprivation remedy for the loss is available); *Decker v. Hillsborough County Attorney's Office*, 845 F.2d 17, 21 (1st Cir.1988) (violation of state statute does not constitute a deprivation of property without due process if the state provided a judicial procedure to assert property rights).

### B. *Substantive Due Process*

 The due process protection afforded by the Fourteenth Amendment of the Constitution guarantees to individuals freedom from the arbitrary exercise of powers of government. The history of the due process clause shows that it has been "applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels*, 474 U.S. at 331, 106 S.Ct. at 665 (emphasis in original). A substantive due process violation occurs when the state action that affected a person is in and of itself "egregiously unacceptable, outrageous or conscience-shocking." *Amsden v. Moran*, 904 F.2d 748, 754 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). Plaintiffs have the burden of showing that the PRPB's denial of the permits for their projects amounted to an arbitrary and capricious deprivation of plaintiffs' use of its property in violation of the substantive component of the due process clause. Even *negligent* deprivation of life, liberty or property may not implicate the due process clause. *Daniels*, 474 U.S. at 331, 106 S.Ct. at 664–65 (emphasis added).

 Plaintiffs argue that since they allegedly met the requirements of the "Public Policy and Criteria for the Siting of Hazardous and Waste Disposal Facilities" (*Criteria*), the PRPB acted arbitrarily and capricious in denying the permits for the hazardous waste disposal project on the ground that such project conflicted with the public policy provisions of the "Objectives and Public Policies of the Plan for the Use of Land" (*Objectives*).

In essence, plaintiffs suggest that we hold that the *Criteria* is the sole body of rules governing the determination of whether to grant or deny a permit for hazardous and toxic waste disposal facility. Assuming the plaintiffs have met every requirement of the *Criteria,* we decline plaintiffs invitation to have this court plan and manage the uses of land in Puerto Rico. The Puerto Rico Legislature has delegated the decision-making process relating to the development of projects in non-zoned areas of Puerto Rico in one entity, the PRPB. Granting or denying permits is one of the PRPB's central functions, and it is authorized to consider various factors, including the health and safety implications of the development of a hazardous and toxic waste disposal facility. *See J.V. Peters & Co. v. Hazardous Waste Fac. App. Bd.,* 596 F.Supp. 1556, 1559 (S.D.Ohio 1984).

Even accepting plaintiffs' conclusory allegations and rhetoric as true that the PRPB may have intentionally delayed consideration of the project and intentionally denied the permit, we conclude that plaintiffs have not made out a federal claim. *Amsden,* 904 F.2d at 757; *Chongris v. Board of Appeals,* 811 F.2d 36, 40 (1st Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987).[10]

---

**10.** Plaintiffs rely on *Bello v. Walker,* 840 F.2d 1124 (3rd Cir.), *cert. denied,* 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988) and *Shelton v. College Station,* 754 F.2d 1251 (5th Cir.1985), to support their substantive due process claim. In *Bello,* a developer's plan to build housing units consisted of five phases. The plan was approved and the developer obtained a building permit for the first phase of the project. The developer applied for building permits for phase five of the project, but the application was de-

nied. The developer sought review in the local court, which ordered the municipality to issue the building permits. The developer brought a Section 1983 claim against the individual defendants and the municipality. The district court granted defendant's motion for summary judgment. On appeal, the Third Circuit reversed on the ground that plaintiffs had presented sufficient evidence to support a jury finding that the municipal council delayed the issuance of the permit for the fifth phase of the project for

## C. *Equal Protection Claim*

The equal protection afforded by the Constitution may be violated when the government classifies its rules or programs to distinguish between persons who should be regarded as similarly situated. L. Tribe, *American Constitutional Law* § 16–1, at 1438 (2nd ed. 1988).

Plaintiffs allege that Resolution JP–236, which requires persons seeking to develop projects in non-zoned areas of Puerto Rico to petition the PRPB for approval of a siting permit, has been applied in a discriminatory fashion since the processing and treatment of their projects' siting permits applications differed invidiously from the processing and treatment of others similarly situated. Plaintiffs contend that the PRPB routinely grants permits for similar developments in the neighborhoods where plaintiffs seek to build their projects. Plaintiffs, however, have failed to provide one example of such discriminatory behavior by the PRPB; for example, that the PRPB granted a permit to another applicant to develop a tourist residential complex in Boqueron Ward, Cabo Rojo.

Conclusory allegations couched in legal theories that cannot withstand close scrutiny are insufficient to support an inference that the denial of the permits by the PRPB was based on prejudice and that it denied plaintiffs treatment as equals vis-a-vis other individuals. *See Acorn Ponds v. Incorporated Village of North Hills,* 623 F.Supp. 688, 693 (E.D.N.Y.1985) (dismissing equal protection claim since plaintiff made no showing that anyone comparably situated was treated more favorably than plaintiff); *Sucn. Suarez v. Gelabert,* 541 F.Supp. 1253, 1261 (D.P.R.1982) (same), *aff'd,* 701 F.2d 231 (1st Cir.1983).

In addition, plaintiffs allege that the defendants discriminated against them on the basis of their political beliefs because co-plaintiff Dr. Cerame Vivas identified and affiliated with the New Progressive Party (NPP) while the defendants were appointed to their positions in the PRPB by the PDP Governor, who publicly opposed the hazardous and toxic waste disposal project.

In support of their equal protection argument, plaintiffs rely on *Cutting v. Muzzey,* 724 F.2d 259 (1st Cir.1984). A developer alleged that the members of a town planning board had violated the due process and equal protection clauses of the Constitution by imposing unusually burdensome conditions on the development of his project. The developer asserted that the motivation behind the decision of members of the board was "racial animus towards the [developers'] purchasers, all of whom had Italian surnames." 724 F.2d at 260. The district court dismissed the complaint on the theory that the developer had no standing to bring an action on behalf of his present and prospective customers.

The First Circuit reversed the district court's dismissal, holding that the developer had standing to assert the equal protection rights of his customers. The developer alleged that the Planning Board imposed more burdensome requirements on him than on others and specifically alleged that the Board's attorney recognized that the Board's action was "impliedly motivated by the fact that the [developer] 'won't sell to anyone but Italians.' "

In contrast, plaintiffs in this case have failed to show that outrageous conditions were imposed on their application, but were not imposed on similarly situated applicants. In *Cutting,* the developer stated a cause of action because he showed that outrageous requirements were imposed *and,* that the Board's attorney acknowledged the discriminatory motivations behind the Board's action. The First Circuit

---

purely personal and political reasons. *Bello* is therefore distinguishable on its facts from this case because plaintiffs here have failed to present evidence that the denial of the permit for their projects was based on political and personal reasons.

Plaintiffs' reliance on *Shelton* is likewise misplaced. The panel decision in *Shelton,* which plaintiffs cited, was subsequently overruled by the Fifth Circuit in a rehearing *en banc, see Shelton v. College Station,* 780 F.2d 475, 483 (5th Cir.), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986).

found that those allegations "seem[ ] enough, even if barely so, to require further exploration at least to the extent permitted by summary judgment procedure." 724 F.2d at 261. Plaintiffs assert that the public prominence of Dr. Cerame Vivas and the explicit public attack upon the project by the Governor and other political leaders raise a higher presumption of unconstitutional motive or intent than the acknowledgment of implied motivations alleged in *Cutting.* We find this argument meritless and not worthy of discussion.[11]

■ Plaintiffs also contend that the PRPB's reasons for denying the siting permit for the tourist residential complex are wrong and should be reviewed by this court. We find that plaintiffs' claims represent no more than an invitation for this court "to sit as a zoning board of appeals." *Village of Belle Terre v. Boraas,* 416 U.S. 1, 13, 94 S.Ct. 1536, 1543, 39 L.Ed.2d 797 (1973) (Marshall, J., dissenting). The Commonwealth's courts rejected plaintiffs' claims because they found no error of law and they have no special ability or authority to question the factual determinations made by the PRPB. Likewise, absent any federal claims, this court will not review the determinations of the state proceedings. *See, e.g., Perkins v. Penagaricano Soler,* 610 F.Supp. 94, 97 (D.P.R.1985).

## D. *First Amendment Claim*

■ Plaintiffs' first amendment claim is essentially identical to their equal protection claim, namely, that the PRPB denied the permits to the projects to retaliate against co-plaintiff Dr. Cerame Vivas for exercising his first amendment rights. We disagree.

■ Plaintiffs contend that the Governor's opposition to their hazardous and toxic waste disposal facility serves as a basis to infer abridgment of their first amendment rights by the PRPB. Assuming that *the governor* opposed plaintiffs' project for partisan political considerations, the record is bare of any allegation that would support an inference that *the PRPB*'s denial of the permits was in retaliation for Dr. Cerame Vivas' expressions of his political beliefs or environmental proposals. No matter how broad plaintiffs' right of free speech may be, their interest in obtaining a permit to develop projects in non-zoned areas of Puerto Rico is not itself a free speech interest. *Cf. Board of Regents v. Roth,* 408 U.S. 564, 575 n. 14, 92 S.Ct. 2701, 2708 n. 14, 33 L.Ed.2d 548 (1972).

Furthermore, the Governor's public opposition to plaintiffs' project is unobjectionable from a first amendment perspective. If anything, it is plaintiffs' claim that runs counter to the principles of the first amendment, which prohibits the restriction of some forms of expression because these may be more effective than others in persuading listeners. In fact, the precise impact of the Governor's publicly stated opposition is subject to debate. *See* L. Tribe, *supra,* 12–4, at 808 n. 19 ("[B]ecause of public skepticism regarding the institution of government generally, it has been questioned whether government speech enjoys an inherent advantage over private expression due solely to its source").

■ In short, there is no showing that the PRPB embarked in an effort to suppress free expression when it denied

**11.** Nor do plaintiffs' allegations raise the same inferences of discrimination as found in *Cordeco Development Corp. v. Santiago Vázquez,* 539 F.2d 256 (1st Cir.), *cert. denied,* 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586 (1976). A landowner applied to the Department of Public Works for a permit to extract sand from the northern boundary of his property. The property was adjacent to that of a wealthy landowner who had access to powerful political figures. After delays and other violations of procedural regulations, the Department of Public Works denied the permit although an identical permit to extract sand had been granted to the wealthy landowner, who was plaintiff's competitor. Eventually, plaintiff received a permit. However, since the permit excluded the tract of land containing the sand dunes on plaintiff's property it was, for all practical purposes, useless. The First Circuit affirmed the district court's finding that the failure of the defendant to grant plaintiff a permit was intentional and based on illegitimate considerations stemming from the opposition by the politically influential competitor of plaintiff, who owned the adjacent property. In contrast, plaintiffs in this case have failed to support the allegations made in the complaint.

plaintiffs' projects.[12] *Packish v. McMurtrie,* 697 F.2d 23, 26 (1st Cir.1983).

## VI. CONCLUSION

Even if plaintiffs had complied fully with the requirements to obtain a permit for their projects and particularly, the hazardous and toxic waste disposal facility, in other words, compliance with the "Public Policy and Criteria for the Siting of Hazardous and Toxic Waste Disposal Facilities" and with the "Objectives and Public Policy of the Plan of Land Use" and with the law of Environmental Public Policy, we conclude that they have failed to state a federal constitutional violation. It is not enough to merely give the state law claims constitutional labels such as "due process" or "equal protection" in order to raise a federal question under Section 1983. *Creative Environments, Inc.,* 680 F.2d at 833. Since there is nothing beyond the allegations in the complaint to suggest that a factual dispute exists in this case, *Packish v. McMurtrie,* 697 F.2d 23, 27 (1st Cir. 1983), defendants' motion for summary judgment is hereby GRANTED. The Clerk shall enter judgment accordingly.

SO ORDERED.

---

12. Although defendants never argued that the court should abstain from considering the merits of this case, we note that other courts have abstained in similar circumstances. *J.V. Peters & Co. v. Hazardous Waste Fac. App. Bd.,* 596 F.Supp. 1556 (S.D.Ohio 1984). *See also Creative Environments, Inc.,* 680 F.2d at 833–34 n. 11.

Federal courts have an unflagging obligation to hear cases properly before them. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Nevertheless, that obligation is subject to certain prudential limitations, which reflect general principles of federalism.

One of these abstention doctrines, established in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) is invoked when the state has enacted a scheme for review of its administrative decisions and the interference of the federal court would disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1245. The grant of permit to develop hazardous and toxic waste disposal facility may constitute a sensitive area of state policy.